UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| COREY DISMUKES,               ) | |
| ) | |
| Plaintiff,           ) | |
| ) | |
| v.                      ) | 11-CV-3345 |
| ) | |
| DR. THOMAS BAKER and   ) | |
| DEBORAH FUQUA,           ) | |
| ) | |
| Defendants.          ) | |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff is incarcerated in Western Illinois Correctional Center. He pursues an Eighth Amendment claim against his treating physician, Dr. Baker, and the health care unit administrator at the prison, Deborah Fuqua. Specifically, Plaintiff alleges that Defendants have failed to treat a large lipoma near the base of the right side of Plaintiff's head, which Plaintiff contends is causing him constant headaches, memory loss, pain, and difficulty sleeping. Plaintiff's lipoma can be seen on Plaintiff's picture on the Illinois Department of Corrections website, www.idoc.state.il.us (picture attached).

1

Before the Court are Defendants' motions for summary judgment. Defendant Fuqua's motion will be granted because she is entitled to rely on Dr. Baker's diagnosis and treatment decisions.

Dr. Baker's motion for summary judgment is more troublesome. Plaintiff has no evidence that the lipoma is, by itself, dangerous to Plaintiff's current or future health. Plaintiff has no evidence to controvert Dr. Baker's opinion that lipomas, as a general matter, are benign, asymptomatic, and require no treatment. However, Plaintiff does aver that his lipoma is causing him significant pain, and Dr. Baker does not specifically address this aspect of Plaintiff's claim. After careful consideration, the Court concludes that too many questions remain to grant Dr. Baker's motion for summary judgment. Accordingly, Dr. Baker's motion will be denied, with leave to renew.

## FACTS

Plaintiff was admitted to the IDOC in February, 2009. In October, 2010, while at Lawrence Correctional Center, Plaintiff saw the prison doctor regarding a lump on Plaintiff's scalp in the right occipital area, which is the right posterior lobe of the cerebral hemisphere. At that time

2

the lump was described in the medical records as "egg sized."  (10/21/10 medical progress note, d/e 42-1, p. 1.)  Plaintiff was told that removal of the lump would be cosmetic or elective.  Id.

Plaintiff was transferred to Western Correctional Center in November, 2010.  He was referred to the doctor to examine "a fluid filled sack on the back of [Plaintiff's] head" and for a low bunk permit.  (11/10/10 medical progress note, d/e 36-1, p. 21.)  Dr. Shah saw Plaintiff on 11/19/10, but Dr. Shah's notes from that date are illegible.

In April 2011, Plaintiff presented to a nurse complaining of migraine headaches.  (4/8/11 medical progress note, d/e 36-1, p. 32.)  The nurse's note states that Plaintiff had a "large baseball sized soft nodule on back [right] side of head.  States had it for [years] but is getting larger."  Id.

Dr. Shah saw Plaintiff again on May 1, 2011 regarding Plaintiff's complaints of headaches.  Dr. Shah's notes are, again, mostly illegible, but the parties agree that Dr. Shah referred Plaintiff to Dr. Baker regarding the mass on the back of Plaintiff's head.  (5/1/11 medical progress note, d/e 42-1, Ex. A-3.)  Dr. Baker was and continues to be the

Medical Director at Western, in charge of supervising the other physicians and medical professionals at the prison. Plaintiff asserts that Dr. Shah's referral recommends surgery, but Dr. Baker contends that Dr. Shah's referral was only for *consideration* of drainage or surgical removal.

Dr. Baker saw Plaintiff May 9, 2011 and diagnosed Plaintiff's mass as a lipoma. Dr. Baker noted that the lipoma measured 7-8 cm by 9-10 cm. According to Dr. Baker's undisputed testimony, "[a] lipoma is a growth of fatty tissue. Lipomas are rarely symptomatic and treatment is usually not required." (Dr. Baker Aff. ¶ 9.) Dr. Baker explained to Plaintiff that the lipoma was not infected, so Dr. Shah's idea of incision and drainage would not help. Dr. Baker also told Plaintiff that lipomas are "cosmetic/comfort" issues and that there was no medical necessity for removal of Plaintiff's lipoma. Dr. Baker prescribed Tylenol to Plaintiff and scheduled him for a follow-up the next month to check on the lipoma's size.

Thereafter, Dr. Baker saw Plaintiff monthly to check on the size of Plaintiff's lipoma. Dr. Baker's monthly measurements of the lipoma between May 2011 and January 2012 were consistently 6-8 cm by 8.5-10

4

cm. However, in January 2012, Nurse Mills measured the lipoma at 12 cm by 10 cm. Plaintiff does not dispute that Nurse Mills measured the lipoma by laying the tape measure along the entire curve of the lipoma, rather than by holding the tape measure above the lipoma for an accurate measure of the lipoma's diameter, as Dr. Baker had done. (medical progress note dated 1/19/12.) Dr. Baker avers that the lipoma has not changed in size, although the measurements since January 2012 are not in the record. On the other hand, Plaintiff avers that the lipoma appears to have tripled in size since Dr. Baker started treating Plaintiff, but Plaintiff does not explain the grounds for his conclusion. (Plaintiff's Aff. ¶ 4, d/e 42, p. 17.).

In September 2001, during Dr. Baker's monthly check of Plaintiff's lipoma, Dr. Baker decided to perform a neurological study to determine whether any objective evidence supported a connection between Plaintiff's headaches and the lipoma. Dr. Baker determined that Plaintiff had normal strength and grip and "tested symmetric in his elbows, shoulders, hips and knees." Dr. Baker "found no neurological defects, and no evidence connecting the Plaintiff's headaches to his lipoma." (Dr.

Baker's Aff. ¶ 17, d/e 36-1, p. 3.)

On January 9, 2012, Plaintiff saw Nurse Mills for complaints of headaches. Nurse Mills wrote in her notes "refer to M.D. for evaluation for need for removal due to c/o pain, [increase] size or continue as ordered." (1/9/12 medical progress note, d/e 42-1, p. 10.) Plaintiff was prescribed Excedrin Migraine for his headaches.

Dr. Baker saw Plaintiff on January 19, 2012. Dr. Baker determined that Plaintiff's lipoma had not increased in size, despite Nurse Mills' measurements. As discussed above, Nurse Mills had used a different measuring technique. Dr. Baker's notes reflect that Plaintiff said, "I keep telling you it hurts, but you don't listen." Dr. Baker did not observe any outward signs which would indicate Plaintiff was in pain. (1/19/12 medical progress note, d/e 42-1, p. 11.) Dr. Baker's 1/19/12 progress note states "continued next page," but the Court does not see the next page in the record. The Court does not see any medical records dated after 1/19/12.

Plaintiff has consistently complained to health care staff of bad headaches, memory loss, and pain which he believes to be caused by the lipoma. Plaintiff testified in his deposition that the headaches did not start until the lipoma grew larger. Plaintiff also asserts that he is taking medication for depression, which he believes is caused by the ridiculing he endures from IDOC employees and other inmates about his disfigurement. (Pl.'s Dep. pp. 40-41.)

Dr. Baker avers that, "[i]n my professional medical opinion . . ., a lipoma is a cosmetic condition which is asymptomatic. I also do not believe, to a reasonable degree of medical certainty, that Mr. Dismukes complaints of headaches and memory loss are caused by, or otherwise connected to, his lipoma." (Dr. Baker Aff. ¶ 20.) In Dr. Baker's opinion, removal of Plaintiff's lipoma is a cosmetic, elective procedure. (Dr. Baker's Aff. ¶ 7.)

## ANALYSIS

Plaintiff's claim falls under the Eighth Amendment to the Constitution, which prohibits cruel and unusual punishment. In the context of medical care for prisoners, cruel and unusual punishment

occurs when a Defendant is deliberately indifferent to a serious medical need of a prisoner:

> A prisoner's claim for deliberate indifference must establish "(1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition." *Arnett*, 658 F.3d at 750. Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and "either acts or fails to act in disregard of that risk." Id. at 751.

Gomez v. Randle, 680 F.3d 859, 865 (7th Cir. 2012). A condition can be considered serious if, without treatment, the plaintiff suffers "'further significant injury or unnecessary and wanton infliction of pain.'" Id.

Negligence, even gross negligence, will not make out a claim for deliberate indifference. McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010). Deliberate indifference requires personal knowledge of an inmate's serious medical need and an intentional or reckless disregard of that need. Id.; Hayes, 546 F.3d at 524. Deliberate indifference arises "'if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.'" Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011)(*quoting* Sain

8

v. Wood, 512 F.3d 886, 894-95 (7th Cir. 2009). In other words, "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." Sain, 512 F.3d at 894-95.

Plaintiff argues that Dr. Baker disregarded the recommendations of Dr. Shah and Nurse Mills to remove the lipoma, but that argument misstates the record, at least as to Nurse Mills. Nurse Mills' note states "refer to M.D. for evaluation for need for removal due to c/o pain, [increase] size or continue as ordered." (1/9/12 medical progress note, d/e 42-1, p. 10.) Nurse Mills did not recommend any specific treatment. Dr. Shah's note is more difficult to read, but even if Dr. Shah did recommend surgery, this would be at most a difference of medical opinion, not evidence of deliberate indifference by Dr. Baker. Norfleet v. Webster, 439 F.3d 392, 396, 396 (7th Cir. 2006)("a difference of opinion among physicians on how an inmate should be treated cannot support a finding of deliberate indifference"). Failure to follow a specialist's recommendation might allow an inference of deliberate indifference in the right circumstance, Gil v. Reed, 381 F.3d 649, 663-64 (7th Cir.

2004), but Dr. Shah is not a specialist. In sum, these referrals are not evidence of deliberate indifference by Dr. Baker.

Plaintiff contends that removal is necessary because of the constant ridicule he endures from other inmates and employees, which he believes has caused his depression. But the oafish behavior of others does not factor into whether removing the lipoma is medically necessary. Further, no evidence suggests that Plaintiff has a mental condition to which Dr. Baker has been deliberately indifferent. Plaintiff is currently taking an anti-depressant.

The only evidence in the record of a serious medical need or deliberate indifference thereto arises from Plaintiff's own testimony about the pain he experiences. "[D]eliberate indifference to prolonged, unnecessary pain can . . . be the basis for an Eighth Amendment claim . . . . 'The length of the delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment.'" Smith v. Knox County Jail, 666 F.3d 1037, 1040 (7th Cir. 2012)(quoted cite omitted).

Plaintiff submits an affidavit in response to the summary judgment motion in which he avers that he suffers excruciating pain if he lies on

the lipoma. (Pl.'s Aff. ¶ 8.). He avers that he has "begun to experience pain down my spinal cord or upper back pain/right side of my neck." Plaintiff testified in his deposition that his neck hurts and that he cannot sleep on his back or side. (Pl.'s Dep. p. 22.) The medical records reflect that Plaintiff has complained consistently that the lipoma itself hurts. He has also complained consistently of memory loss and bad headaches, which he believes are attributable to the lipoma.

In Dr. Baker's medical opinion, the lipoma is not the cause of, nor is it connected to, Plaintiff's headaches and memory problems. However, Dr. Baker does not explain how the size and location of Plaintiff's lipoma factor into this conclusion. Nor does he address whether Plaintiff's claim that the headaches started when the lipoma grew can be considered as evidence that the lipoma's growth is a contributing cause to Plaintiff's headaches. Is it possible that the lipoma is exerting sufficient pressure on Plaintiff's nerves or blood vessels to cause or contribute to causing Plaintiff's headaches? Assuming, arguendo, that the lipoma is causing Plaintiff's pain, what are the treatment options, and would Dr. Baker recommend consideration of any of them? How did Dr. Baker's test for

muscle strength rule out whether the lipoma is causing Plaintiff's headaches?

On the other hand, the Court cannot tell on this record whether a question of disputed fact exists for the jury. The extent of Plaintiff's pain is not clear. Plaintiff testified in his deposition that he works as a porter, attends yard, lifts weights, and plays basketball, activities which suggest that Plaintiff's pain falls more on the side of discomfort than serious pain. (Pl.'s Dep. p. 11.); *cf.* Gonzales v. Feinerman, 663 F.3d 311 (7th Cir. 2011)(refusal to authorize hernia surgery could amount to deliberate indifference where plaintiff's pain was "so debilitating that he cannot carry on his daily activities or sleep comfortably'"). Moreover, Dr. Baker has not been deliberately indifferent to Plaintiff's pain. Dr. Baker has prescribed pain medication such as Tylenol and Excedrin. Plaintiff concedes that the Excedrin helps his headaches provided he avoids touching the lipoma or lying on it. (d/e 42, p. 7.)

After careful consideration, the Court concludes that summary judgment cannot be granted to Dr. Baker in light of Plaintiff's complaints of pain. Dr. Baker's affidavit addresses Plaintiff's headaches but does not

address Plaintiff's other complaints of pain.  Dr. Baker avers generally that lipomas are rarely symptomatic, but he does not specifically address whether the location and size of Plaintiff's lipoma could cause the neck and back pain complained of by Plaintiff.  Are Plaintiff's complaints of pain consistent with pain that could be caused by his large lipoma pressing on Plaintiff's nerves or blood vessels?  Is Plaintiff one of the rare cases in which a lipoma is symptomatic?

The unpublished cases cited by Dr. Baker do not hold that a lipoma can never amount to a serious medical need.  The plaintiff in <u>Flores</u> complained that a lipoma on his hip affected his muscle function, but he did not contest the notations in his medical records that his range of motion and strength were unaffected.  <u>Flores v. Wellborn</u>, 119 Fed.Appx. 5 (7th Cir. 2004).  In <u>Martinez,</u> the plaintiff complained only that a lipoma on his back was tender and that he could not sleep on one side.  <u>Martinez v. Hedrick</u>, 36 Fed.Appx. 209 (7th Cir. 2002).  The plaintiff in <u>Kendrick</u> challenged the prison's refusal to refer him to an oncologist for what the prison doctor had diagnosed as a golf-sized fatty and benign mass in plaintiff's arm.  None of these cases involved a large lipoma on

13

the back of the head like Plaintiff's, or complaints of constant headaches, neck and back pain, and "excruciating" pain when lying on the lipoma.

In short, too many questions remain unanswered for the Court to confidently grant summary judgment to Dr. Baker.

The conclusion is different for Deborah Fuqua. As the health care unit administrator, she was entitled to rely on Dr. Baker's diagnosis and treatment decisions. Greeno v. Daley, 414 F.3d 645, 656 (7th Cir. 2005)("'If a prisoner is under the care of medical experts... a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands.'")(quoted cite omitted). Accordingly, summary judgment must be granted for Fuqua.

IT IS THEREFORE ORDERED:

    1)    Defendant Fuqua's motion for summary judgment is granted (d/e 38).

    2)    Defendant Dr. Baker's motion for summary judgment is denied (d/e 36), with leave to renew by February 28, 2013.

    3)    The final pretrial conference is rescheduled to June 3, 2013 at 1:30 p.m.

4) The trial date is vacated, to be rescheduled at the final pretrial conference.

ENTERED: 1/2/2013

FOR THE COURT:

                              <u>**s/Sue E. Myerscough**</u>
                              SUE E. MYERSCOUGH
                              UNITED STATES DISTRICT JUDGE